**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| VINCENT LUCAS, | : | Case No. 1:25-cv-563 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| vs. | : | |
| | : | |
| KYLE RAPIER, et al., | : | |
| | : | |
| Defendants. | : | |

---

## ORDER ADOPTING REPORT AND RECOMMENDATION (DOC. 31)

---

This matter is before the Court upon the Order and Report and Recommendation (the "Report") (Doc. 31) of United States Magistrate Judge Karen L. Litkovitz, to whom this case is referred pursuant to 28 U.S.C. § 636(b). In the Report, the Magistrate Judge granted Plaintiff's Motion to Amend Complaint (Doc. 19). The Report also recommends that Defendants' Rule 12(c) Motion be denied as moot. Defendants filed Objections to the Report (Doc. 34), as did Plaintiff (Plaintiff's Objections, Doc. 38). Defendants responded to Plaintiff's Objections (Doc. 43) and Plaintiff responded to Defendants' Objections (Doc. 45). Thus this matter is ripe for the Court's review.

### BACKGROUND

Plaintiff brings this action against Defendant Kyle Rapier, prosecutor for the City of Fairfield, Ohio, Defendant Katie Nelson, victim advocate for the City of Fairfield, Ohio, and Defendant City of Fairfield, Ohio. (Compl., Doc. 1.) The facts of this case arise from an incident that occurred on February 10, 2024, between Jennifer Honnerlaw, her daughter, and Michelle Haussler, none of whom are parties to this lawsuit. (*Id.* at ¶ 11.)

As the Report provides greater detail into this incident, the Court declines to repeat the full series of events. (*See* Report, Doc. 31, Pg. ID 481-84.) Essentially, Plaintiff brings this lawsuit because he believes Michelle Haussler was wrongfully accused and charged in connection with the actions she took during the incident. (Compl., Doc. 1, ¶¶ 15-18.) Plaintiff alleges that Defendant Rapier refused to consider evidence that exculpated Ms. Haussler and, together with Defendant Nelson, the two entered into a conspiracy to deprive Plaintiff of his First Amendment rights to freedom of speech and press. (*Id.* at ¶¶ 16, 25.) When Plaintiff created websites dedicated to highlighting Ms. Haussler's case, Defendants threatened that they violated Ms. Haussler's No Contact order and if Plaintiff did not take them down, Ms. Haussler would be charged with violating her order. (*Id.* at ¶¶ 20-25.) Defendant Rapier also attempted to induce Ms. Haussler to plead guilty by threatening violations of the No-Contact Orders for Plaintiff's websites. (*Id.* at ¶¶ 29-30.)

In his original Complaint, filed August 8, 2025, Plaintiff brought several causes of action: (1) viewpoint-based censorship in violation of the First Amendment; (2) content-based censorship in violation of the First Amendment; (3) censorship of political speech in violation of the First Amendment; (4) restraint on freedom of the press in violation of the First Amendment; (5) violation of Due Process Rights of the Fifth and Fourteenth Amendments; (6) violation of the right to freedom of speech under the Ohio Constitution; (7) violation of Ohio public record laws; and (8) general allegations applicable to all causes of action seemingly rooted in the Sixth Amendment. (Compl., Doc. 1, ¶¶ 36-91.) Plaintiff amended his Complaint on October 30, 2025, to substitute unknown parties for

2

Defendants Rapier, Nelson, and City of Fairfield, Ohio, although the causes of action remained the same as the original Complaint. (First Am. Compl., Doc. 11.)

Then, on December 16, 2025, Defendants filed a Motion for Judgment on the Pleadings (Doc. 18). The following day, Plaintiff filed a Motion to Amend Complaint (Doc. 19); the Second Amended Complaint does not change the parties or causes of action, but adds details to the description of Defendants Rapier and Nelson's alleged conduct. (*See* Second Am. Compl., Doc. 32.) Then, on January 30, 2026, Plaintiff filed a Motion for Partial Summary Judgment (Doc. 29) and a Motion for Preliminary Injunction (Doc. 30). On February 3, 2026, the Magistrate Judge issued an Order and Report and Recommendation. (Report, Doc. 31.) In the Report, the Magistrate Judge granted Plaintiff's Motion to Amend Complaint and ordered the Clerk to file the Second Amended Complaint as a separate document on the docket. (*Id.*) The Report also stated that if the District Judge adopts this Order, then the Order staying discovery (Doc. 27) should be vacated. (*Id.*) Finally, the Report recommended that Defendants' Motion for Judgment on the Pleadings be denied as moot, as it addressed the First Amended Complaint, which is no longer the operative complaint. (*Id.*)

## LAW AND ANALYSIS

Rather than consider both parties' Objections together, the Court begins with Defendants' Objections to the Report and then will proceed to Plaintiff's Objections.

### I. Defendants' Objections

Defendants object to both the Report's order granting Plaintiff leave to amend his Complaint and to the recommendation that their Motion for Judgment on the Pleadings

3

be denied as moot. (Defendants' Objections, Doc. 34, Pg. ID 529.) However, to the extent that Defendants object to the Magistrate Judge's order granting him leave to amend his Complaint, this Court's review of the order is limited to whether the determination was clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). To that end, the Court does not find that the order was clearly erroneous or contrary to law.  As the Report states, "leave to amend a complaint should be liberally granted." (Report, Doc. 31, Pg. ID 486.) Courts consider several factors when deciding whether to amend, including "undue delay or bad faith in filing the motion, repeated failures to cure previously identified deficiencies, futility of the proposed amendment, and lack of notice or undue prejudice to the opposing party." (*Id.* (quoting *Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*, 930 f.3d 775, 786 (6th Cir. 2019)).)

Defendants maintain that Plaintiff's proposed amendment is futile and cannot survive a motion to dismiss. (Defendants' Objections, Doc. 34, Pg. ID 532.) Specifically, Defendants argue that the Second Amended Complaint merely adds details to the allegations but does nothing to bolster Plaintiff's standing argument, which Defendants attack in their Motion for Judgment on the Pleadings (*see* Doc. 18). (*Id.*) However, the Court is not persuaded. Standing requires that a plaintiff show (1) an injury that is (2) "fairly traceable to the defendant's allegedly unlawful conduct" and that is (3) "likely to be redressed by requested relief." *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (cleaned up). The Second Amended Complaint alleges that Plaintiff shut down his websites out of fear that Defendant Rapier would prosecute him. (Doc. 21-1, Pg. ID 177.) The Order was correct in stating that Plaintiff's own subjective fear of

4

prosecution for maintaining his websites does not equate to an injury. (Report, Doc. 31, Pg. ID 491.) But, the Second Amended Complaint also alleges that Defendants intended to charge Ms. Haussler with violating her No Contact Order if Plaintiff kept his websites running. (Second Am. Compl., Doc. 32, ¶ 29.) As the Magistrate Judge stated in her Order, "it is reasonable to conclude that a person of ordinary firmness would self-censor if to do otherwise risked incarceration." (Report, Doc. 31, Pg. ID 491 (citing *Cf. Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011)).)

Defendants argue that the Report erroneously relies on *Thompson*, which dealt with Title VII retaliation, not First Amendment rights. (Defendants' Objections, Doc. 34, Pg. ID 538.) However, the Report states that the *Thompson* conclusion is consistent with *Nat'l Rifle Assoc. v. Vullo*, 602 U.S. 175, 180 (2024), "which held that a plaintiff may state a First Amendment claim by alleging that a government official coerced a private party in order to suppress the plaintiff's view." (Report, Doc. 31, Pg. ID 492.) Here, Plaintiff alleges that Defendant Nelson and Rapier threatened Ms. Haussler if Plaintiff did not take down his websites, just as the Supreme Court contemplated in *Vullo*. (*See* Second Am. Compl., Doc. 32, ¶ 29.)

Defendants also argue that, if the Court accepts Plaintiff's factual allegations as true, "a reasonable inference could be drawn that the imposition of a no-contact order was at the request of the victim." While Plaintiff does allege that the victim requested his website be taken down, the allegations also include statements that Defendant Nelson disliked the websites' contents and wanted them taken down. (*See* Second Am. Compl., Doc. 32, ¶¶ 22-29.) The allegations continue with claims of a conspiracy by Defendants

5

Nelson and Rapier to threaten Ms. Haussler with violations of her No-Contact Order if the websites remained. And, Plaintiff alleges that Defendant Rapier ensured that one of Plaintiff's websites was included in a second No-Contact Order. (*Id.* at ¶ 43.) Regardless of who requested that the sites be removed, the Second Amended Complaint still alleges that Defendants Rapier and Nelson conspired to deprive Plaintiff of his First Amendment rights.

The Court also finds that the Magistrate Judge did not err in concluding that the Second Amended Complaint bolsters the causation element of standing. As the Report notes, "a direct threat between a government official and the source of the protected speech is not necessary for causation." (Report, Doc. 31, Pg. ID 492 (collecting cases).) And, the Report states that the Second Amended Complaint alleges that Defendant Nelson conveyed Plaintiff's websites to Defendant Rapier while acting as victim advocate, and Defendant Rapier specifically referenced Plaintiff's websites as the basis of new charges against Ms. Haussler. (Second Am. Compl., Doc. 32, ¶¶ 29-30.) The attorney for Ms. Haussler also highlighted to Plaintiff the connection between the websites' existence and potential new charges against Ms. Haussler. (*Id.* at ¶ 37.) The Court finds that, viewing these allegations as true, they do plausibly allege a causation between Defendants' alleged misconduct and Plaintiff's injury-in-fact.

To this end, Defendants state that their actions cannot be fairly traced to Plaintiff's injury. (Defendants' Objections, Doc. 34, Pg. ID 539.) They point to the fact that the No-Contact Orders at issue were imposed by the Fairfield Municipal Court and the sentencing judge. But, this is irrelevant. This contention ignores the fact that, according

6

to Plaintiff, Defendants used threat of violations of the No-Contact Orders to chill his speech, and "sought and obtained" an additional No-Contact Order that included a requirement for Plaintiff to shut down one of his sites. (*See* Second Am. Compl., Doc. 32, ¶¶ 32, 43.) Thus, the Court finds that these allegations draw a fairly traceable connection between Defendants' misconduct regarding the No-Contact Orders and Plaintiff's injury.

Last, the Court notes no error in the Magistrate Judge's finding that Plaintiff adequately alleges that his injury is redressable by this Court. (*See* Report, Doc. 31, Pg. ID 494.) Specifically, the Report points to the Second Amended Complaint's request for declaratory judgment that Defendants violated his First Amendment rights. (*Id.*) And, Plaintiff seeks to permanently enjoin Defendants from using his protected speech as basis for prosecution of Ms. Haussler. (*Id.*) The Court agrees that this shows redressability. Accordingly, the Report did not err in finding Plaintiff's Second Amended Complaint was not futile, as the amendments addressed prior insufficiencies related to standing.

Defendants object to this finding, arguing that redressability in this Court does not exist for Plaintiff's sought relief. (Defendants' Objections, Doc. 34, Pg. ID 541.) Specifically, Defendants state that, to the extent that Plaintiff wants to permanently enjoin Defendants from using his protected speech as a basis for prosecution of Ms. Haussler under the Second No-Contact Order, this is contrary to the plain language of Ohio law. (*Id.*) Indeed, no-contact orders are a community-control sanction that only the sentencing court may modify. *See* O.R.C. § 2929.25(B). Thus, according to Defendants, only the sentencing court here could impose penalties for Ms. Haussler's violation of the No-Contact Orders, rendering any injunction against Defendant "fruitless." (Defendants'

Objections, Doc. 34, Pg. ID 541.) The Court is not persuaded. As the Second Amended Complaint makes clear, Plaintiff alleges that Defendants threatened to charge Ms. Haussler with violations, not impose the sentence connected to those violations. (*See* Second Am. Compl., Doc. 32, ¶¶ 29-39.) And, Plaintiff claims that Defendant Rapier "sought and obtained" the Second No-Contact Order from the municipal court. (*Id.* at ¶ 43.) Accordingly, Plaintiff does not seek to have this Court interfere with the Second No-Contact Order. Rather, Plaintiff seeks to have this Court enjoin Defendants from using his websites as grounds for pursuing future charges of violations of the Second No-Contact Order.

Nevertheless, Defendants state that Plaintiff's request for declaratory judgment is insufficient for standing. As Defendants see it, Plaintiff's alleged injuries are for "constitutional deprivations that occurred in the past." (Defendants' Objections, Doc. 34, Pg. ID 542.) Defendants are correct that past harms are insufficient to provide injunctive or declaratory relief. (*Id.* (citing *Kanuszewski v. Mich. Dept. of Health and Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019)).) However, they are incorrect that Plaintiff seeks only redress for past harms. The Second Amended Complaint makes clear that Plaintiff fears Defendants' actions are part of an ongoing conspiracy that continues to silence his free speech. (Second Am. Compl., Doc. 32, ¶¶ 29-43.) Although the actions that led to the alleged violation of his First Amendment rights occurred in the past, that is, when Defendants obtained the Second No-Contact Order, the violation itself is ongoing, as his website is still ordered down. (*Id.* at ¶ 44.) To the extent that Plaintiff seeks this Court to declare that Defendants are violating his First Amendment rights, the Court finds that

8

Plaintiff pursues relief for an ongoing harm. The Report thus has no findings that are contrary to law or clearly erroneous on its standing arguments; Defendants' Objection is not well-taken.

Next, Defendants object to the Court's Order because the City of Fairfield, Kyle Rapier, and Katie Nelson are improper parties. (Defendants' Objections, Doc 34, Pg. ID 533.) However, as Plaintiff correctly points out, this argument is raised for the first time in Defendants' Objections and was not properly before the Magistrate Judge. (Plaintiff's Response, Doc. 45, Pg. ID 738.) Accordingly, this Court declines to address this argument, as Defendants' failure to raise this argument before the magistrate judge constitutes a waiver. *Murr v. United States*, 200 F.3d 895, 902, n.1 (6th Cir. 2000).

One last Objection remains. Defendants argue that, since the Court should not adopt the Magistrate Judge's Order granting Plaintiff's Motion to Amend, their Motion for Judgment on the Pleadings should not be denied as moot. (Defendants' Objections, Doc. 34, Pg. ID 544.) However, since the Court finds Defendants' Objections not well-taken, and adopts the Magistrate Judge's Order granting Plaintiff leave to amend, this Objection, too, is not well-taken.

## II.    Plaintiff's Objections

The Court will now address Plaintiff's Objections. Plaintiff first takes issue with the Report's finding that Defendants Nelson and Rapier are entitled to absolute immunity as to potential monetary damages. (Plaintiff's Objections, Doc. 38, Pg. ID 664-665.) Although Plaintiff refers to these determinations as "recommendations," the Court notes that they are a part of the Magistrate Judge's order granting Plaintiff leave to amend. (*See*

Report, Doc. 31, Pg. ID 500.) The Court, therefore, reviews these findings only to the extent that they are clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). Beginning with Defendant Nelson's immunity, Plaintiff states that, as a victim advocate, Nelson is not entitled to absolute immunity. (*Id.* at Pg. ID 665.) However, it is well-settled in the Sixth Circuit that absolute immunity extends to any individual acting within the judicial system, and that the "analytical key [...] is advocacy — whether the actions in question are those of an advocate." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (finding social workers in certain circumstances were entitled to absolute immunity); *Barber v. Miller*, 809 F.3d 844 (6th Cir. 2015) (finding the same); *see also Briscoe v. LaHue*, 460 U.S. 325 (1983) (witnesses and other persons integral to the judicial process were entitled to absolute immunity).

Nevertheless, Plaintiff attempts to paint Justice Scalia's concurrence in *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) as evidence that a victim advocate is not granted absolute immunity because no tradition of absolute immunity for victim advocates existed when the relevant statute, 42 U.S.C. § 1983 was enacted. (Plaintiff's Objection, Doc. 38, Pg. ID 665-66.) As the Report correctly notes, though, *Buckley* provided that the applicability of absolute immunity was determined by a functional analysis: that is, "the nature of the function performed, not the identity of the actor who performed it." 509, U.S. at 269. In other words, while some actions of a victim advocate do not fall under the "common-law tradition of absolute immunity," at other times, the functions of a victim advocate do fall within this scope. *Id.* The Report engaged in this functional analysis and found that Defendant Nelson's alleged conduct fell within this common-law tradition. (Report, Doc,

10

31, Pg. ID 497). The Magistrate Judge made this finding despite the Second Amended Complaint's statement that Defendant Nelson is not a prosecutor, nor does she serve any prosecutorial role. (*See* Second Am. Compl., Doc. 32, ¶¶ 5-7; Report, Doc. 31, Pg. ID 497; Plaintiff's Objections, Doc. 38, Pg. ID 668.) Indeed, determining the existence of prosecutorial conduct for purposes of absolute immunity is a question of law, which this Court is not obligated to accept as true. *Cheolas v. City of Harper Woods*, No. 2009 WL 388548, at *7 (E.D. Mich. Feb. 13, 2009) (finding that a party's assertion that they were not performing prosecutorial functions was a legal conclusion). And this Court finds no error in the Magistrate Judge's determination. Based on the description of Defendant Nelson's conduct in the Second Amended Complaint, specifically, that she showed Defendant Rapier Plaintiff's websites as potential violation of the No-Contact Order, the Court finds that the nature of these actions falls within the scope of the judicial process. (*See* Second Am. Compl., Doc. 32, ¶¶ 22-27.) This Objection is not well-taken.

Turning to Defendant Rapier, Plaintiff objects to the finding that he is entitled to absolute immunity for monetary damages because, as Plaintiff states, Defendant Rapier was acting with no jurisdiction to violate Plaintiff's First Amendment rights. (Plaintiff's Objections, Doc. 38, Pg. ID 671.) Defendants addressed this argument in their Response, noting that the Sixth Circuit has acknowledged times when absolute immunity does not apply because an individual was acting beyond the legitimate scope of prosecutorial authority. (Defendants' Response, Doc. 43, Pg. ID 726 (citing *Rouse v. Stacy*, 478 F. App'x 945 (6th Cir. 2012)).) However, importantly, Defendants correctly distinguish the actions of Defendant Rapier and the individual in *Rouse* and similar cases. (*Id.* at Pg. ID 726.) For

11

instance, in *Rouse*, the prosecutor physically beat a detainee to force him to plead guilty. *See* 478 F. App'x at 953. The court found that such actions were "distinctly contrary to the principles set forth" in the law of absolute immunity. *Id.* at 956. Yet, here, Plaintiff alleges that Defendant Rapier threatened to bring charges of violations against Ms. Haussler because of the websites as a way to coerce Ms. Haussler into a plea agreement. (*See* Second Am. Complaint, Doc. 32, ¶¶ 29-30.) The Sixth Circuit has held that, not only are prosecutors permitted to threaten additional charges as a way to induce guilty pleas, *see United States v. LaDeau*, 743 F.3d 561, 566, 569 (6th Cir. 2013), but absolute immunity even applies when the prosecutor is involved in illegal or improper conduct. *See Price v. Montgomery Cnty.*, 72 F.4th 711, 719 (6th Cir. 2003). As Defendant Rapier's conduct was within the context of forcing Ms. Haussler into a plea, his actions, even if improper or illegal, fall within the scope of prosecutorial functions; he is thus immune from monetary damages. The Magistrate Judge did not err in this determination.

Finally, Plaintiff argues that the Report erroneously finds that he lacks standing on the basis of Defendants' implicit threat of prosecution. (Objections, Doc. 38, Pg. ID 679.) However, the Sixth Circuit clearly states that the "mere possibility of prosecution […] does not amount to a 'credible threat' of prosecution. Instead, the threat of prosecution must be certainly impending to constitute injury in fact." *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 454 (6th Cir. 2017) (cleaned up). The Magistrate Judge was correct in finding that the Second Amended Complaint contained no allegations pointing to a real, impending threat of prosecution for Plaintiff. Nevertheless, and, to bolster this point, the Magistrate Judge found an impending threat of prosecution

12

against Ms. Haussler; accordingly, the Report determined that this threat caused a chilling of Plaintiff's First Amendment rights, an injury-in-fact which gave Plaintiff standing. (*See* Report, Doc. 31, 491 (citing *Thompson*, 562 U.S. at 174).) This Objection, too, is not well-taken.

As required by 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), the Court has made a de novo review of the record in this case. Upon said review, the Court finds that the parties' Objections are not well-taken and are accordingly **OVERRULED**. The Court agrees with the Report's Order and Recommendations. Accordingly, the Court orders the following:

1. The Magistrate Judge's Order and Report and Recommendation (Doc. 31) is **ADOPTED IN ITS ENTIRETY**;

2. Plaintiff's Second Amended Complaint (Doc. 32) **SHALL BE** the operative Complaint in this matter;

3. The Order Staying Discovery (Doc. 27) is **VACATED**;

4. Defendants' Motion for Judgment on the Pleadings (Doc. 18) is **DENIED AS MOOT**;

5. Plaintiff's Motion for Partial Summary Judgment (Doc. 29) and Motion for Preliminary Injunction (Doc. 30) are **DENIED AS MOOT** as they do not relate to the Second Amended Complaint (Doc. 32); and

6. Defendants' Motion to Hold in Abeyance Plaintiff's Motion for Partial Summary Judgment (Doc. 39) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
MATTHEW W. McFARLAND
UNITED STATES DISTRICT JUDGE

14